GEORGE SEMMES, USE OF JAMES BADEN, *vs.* JAMES NAY-
LOR OF ISAAC, SURVIVOR OF CHARLES L. BOTELER.—*De-
cember*, 1842.

Defences arising after the commencement of an action, should be pleaded
*puis darrein continuance*, or against the further maintenance of the suit.

G was the deputy sheriff of *S*, and gave bond with *B* as his surety, both were
sued to judgment; after this *G* with *J*, as his surety, gave an injunction
bond, and procured an injunction to stay proceedings upon the judgment
against him. His bill was finally dismissed. In an action upon the in-
junction bond entered for the use of *B* against *J*, the surety, who pleaded
that *G* had prosecuted his injunction with effect, and performed all he was
bound to do by the condition of that bond; it appeared that *B*, the equita-
ble plaintiff, had paid off the judgment against him, part before and part
after the commencement of the action against *J*. HELD, that under the
state of the pleadings, the defendant *J* could not give in evidence the pay-
ment by *B*, made after the commencement of this action, and that *B*, by
virtue of his payment of the original judgment against him, was not enti-
tled to an assignment from *S* of the injunction bond, so as to enable him
to proceed against *J*. The principles of contribution between co-sureties
do not apply to such a case.

The surety in the first bond would be entitled on the ground of substitution,
to the benefit of any lien upon his own property, either real or personal,
which the principal debtor might give to the creditor, as a security for the
payment of his debt, or as the means of re-imbursement and indemnity
against loss, if in his character of surety he should be compelled to satisfy
such debt, and that, no matter when the lien was created.

APPEAL from *Prince George's* county court.

This was an action of *debt*, commenced on the 3rd January,
1839, by the appellant against *James Naylor of George*, and
*James Naylor of Isaac, surviving* obligors of *Charles L. Bote-
ler*. The plaintiffs declared upon a bond of the defendants
for $1,000, dated 4th December, 1827, payable when there-
unto required.

The bond was exhibited with the nar and contained a con-
dition, reciting that *James Naylor of George* had obtained an
injunction out of *P. G.* county court, upon a judgment therein
rendered in favor of *George Semmes*, for $474.27, damages,
$16.43 costs, and that the said *J. N. of G.* would prosecute his
injunction with effect, and satisfy and pay the said *G. S.* as
awarded, &c. The appellee only was arrested, and he pleaded

general performance. The plaintiff replied that the injunction had been discontinued and dissolved, and the bill on which it was granted struck off and discontinued, and he not satisfied or paid his judgment. The defendant rejoined, that *J. N. of George*, did prosecute his said writ of injunction with effect, and did perform all he was bound to do according to the condition, &c., on which issue was joined. The jury found for the defendant.

At the trial of this cause, which was commenced without the entry of any use, the plaintiff, to maintain the issues joined on his part, read to the jury the bond upon which the action was brought, and the record of the judgment at law recited in the said bond. He also proved by the production of the record of the proceedings upon the equity side of the said county court, that the bill filed by the said *James Naylor of George*, had been dismissed with costs by the said court as a court of equity, at January term, 1830, as stated in the plaintiff's replication, and there rested his case.

The defendant thereupon, to maintain the issues joined on his part, offered to prove to the jury by competent evidence, that *James Baden*, for whose use this suit is now entered and prosecuted, was one of the sureties of the said *James Naylor of George*, in a bond given by him to the legal plaintiff in this action, as his deputy, he, the said legal plaintiff, being then the high sheriff of *Prince George's* county; and that at October term, 1827, judgment was rendered against him as principal in said bond, in favor of the said legal plaintiff. And the defendant further proposed to prove by competent evidence, that a judgment was rendered at the same time in favor of the said plaintiff against *James Baden*, the *cestui que use*, of this action on the same bond, and for the same debt; and the defendant further offered to prove by competent evidence, that the judgment against the said *James Naylor of George* was taken by him to the Court of Appeals, on exceptions filed, and that two appeal bonds were filed by him, one dated October 18th, 1827, and the other November 15th, 1827, and the said *James Baden* was one of the sureties therein, and that the

judgment against said *James Baden* was entered to abide the decision by the Court of Appeals of the case against *Naylor of George*. And the defendant further offered to prove by like evidence, that the bond upon which this action was brought, was given by the said *James Naylor of George*, upon filing a bill for an injunction to stay proceedings upon the said judgment, so rendered against him at October term, 1827, and affirmed by the Court of Appeals in favor of the said *George Semmes;* and then offered to prove, that *James Baden*, who was the surety of the said *James Naylor of George*, in the bond given by him as deputy sheriff as aforesaid, paid part of the said judgment rendered against him, before this suit was brought, and that he paid the balance of the judgment against himself soon thereafter, and no assignment was ever made, or any use entered of the judgment against said *James Naylor of George for James Baden*. But the plaintiff, by his counsel, objected to the evidence, first, upon the ground that the same was not admissible under the pleadings in this cause, and secondly, because the said payment of the said judgment against himself by *James Baden*, the *cestui que use* of this suit, entitled him to an assignment of the debt from the creditor, *George Semmes*, together with all the liens and remedies held by him for the security of the same, including the bond sued on in this action. The court, however, overruled both said objections, being of opinion that the evidence so offered by the defendant was admissible under the pleadings, and that if the jury should find from the said evidence that the judgment against the said *James Baden*, as surety for the said *James Naylor of George*, was paid as aforesaid by the said *James Baden*, such payment gave him no right of action against, or to an assignment of the creditor's claim on the bond on which this suit is brought, and that in such case their verdict must be for the defendant. To both of which opinions and judgments of the court, (Clement Dorsey, A. J.,) the plaintiff excepted; and the verdict and judgment being against him, he prosecuted this appeal.

The cause was argued before STEPHEN, ARCHER, DORSEY and CHAMBERS, J.

By J. JOHNSON for the appellant, and
By PRATT and TUCK for the appellee.

STEPHEN, J., delivered the opinion of this court.

Under the pleadings in this cause, the court below were clearly wrong in admitting the evidence of the payment made by *Baden,* after the suit was instituted. Defences arising after the commencement of the action, should be pleaded *puis darrein continuance,* or against the further maintenance of the suit. *Agnew vs. the Bank of Gettysburg,* 2 *Harr. & Gill,* 478. "The rule is, that where matter of defence has arisen after the commencement of the suit, it cannot be pleaded in bar of the action generally; but must, when it has arisen before plea or continuance, be pleaded as to the further maintenance of the suit, and when it has arisen after issue joined, *puis darrein continuance.*" See the authorities referred to in 2 *Kinne's Law Com.* 476.

The other question decided by the court below was, we think, correctly adjudicated. Upon principles of reason, as well as of sound law, the payment made by *Baden* to *Semmes,* as the surety of *Naylor,* in his official bond as deputy sheriff, did not entitle him to an assignment of the injunction bond upon which that action had been instituted. The bond was given to *Semmes* by *Naylor,* long after *Baden* had contracted his responsibility as the surety of *Naylor,* and could have constituted no inducement to his assumption of such liability, as the means of indemnity against loss. The principles of justice and equity, upon which the doctrine of contribution between co-sureties is founded, do not seem to apply to such a case. Their claim certainly has its foundation in the clearest principles, not only of law, but of morals. For where all are equally bound by a common burthen, and are equally relieved, justice demands that all should contribute in proportion towards a benefit obtained by all, upon the rule of equity, *qui sentit commo-*

*dum, sentire debet et onus.* The doctrine held by the court below seems to be countenanced and sustained by the reasoning of this court in several cases, the decisions in which, involved principles strongly applicable to the present controversy. In the case of *Hollingsworth vs. Floyd,* reported in 2 *H. & Gill,* 87, judgments were obtained against principal and surety, and the debt was paid by the surety ; to reimburse to him such payment, an execution was issued upon the supersedeas judgment of the principal, against him and his sureties ; in that case, this court (when speaking in reference to the liability of the sureties in the supersedeas judgment, to refund to the surety in the bond upon which the judgments were obtained, the money paid by him for his principal,) held the following language : "The process was moreover issued upon the supersedeas judgment against *Joseph P. Floyd,* and his superseders, *Henry Abell* and *Edward Spalding, Jun'r.,* on whom *William Floyd,* in justice, could have no claim. If he had satisfied the whole debt, we should have said he was entitled equitably to an assignment of the judgment against his principal, and all liens which the principal had given to the creditor ; but beyond this we should have been indisposed to have gone. We could not have rendered other persons liable to *William Floyd,* whose responsibility was in no sort contemplated, when he entered surety for his principal." In 5 *H. & John's. Rep.* 241, speaking in reference to the liability of bail to re-imburse to a surety money paid for his principal, for whom the bail had become bound, this court express themselves in terms of similar import. It is there said, "what equity has the surety, who became bound with his principal, to look to the bail of the latter, and who were not fixed at the date of the assignment for his indemnity ? Their engagements were not contemporaneous or of the same nature. The undertaking of the surety was long prior in point of time to that of the bail, and the extent and nature of their obligations were essentially different." "The surety, when he became bound for the principal, looked to him, and such fixed securities as he had given to the creditor for his indemnity, and to permit him to proceed against the

bail, who were not fixed at the time of the assignment, would be contrary to the first principles of justice." This was the case of an appeal from Chancery, and the decision of the court in reference to the liability of bail was governed exclusively by the general principles of equity, without regard to any remedy or responsibility in this State, created by statutory enactment. The principle is well settled, that where the surety pays off a debt, he is entitled to have from the creditor an assignment of the security, to enable him to obtain satisfaction for what he had paid beyond his proportion. In 1 *John. C. Rep.* 413, Chancellor KENT says, "if the creditor to a bond exacts the whole of his demand of one of the sureties, that surety is entitled to be substituted in his place, and to a cession of his rights and securities, as if he was a purchaser, either against the principal debtor or the *co-sureties;*" and in 1 *Story's Equity,* 474, it is said, "it matters not, in case of a debt, whether the sureties are jointly and severally bound, or only severally, or whether their suretyship arises under the same obligation or instrument, or under divers obligations or instruments, if they are for the same identical debt." In the same book at page 477, the principle is stated to be that, "if there should be separate bonds given with different sureties, and one bond is intended to be subsidiary to, and a security for the other, in case of a default in payment of the latter, and not a primary concurrent security; in such a case, the sureties in the second bond would not be compellable to aid those in the first bond by any contribution."

In the *1st vol.* of the *Law Library,* 160, it is said, that "the right to contribution exists between all sureties of the same degree, whether they are engaged jointly or severally, and if severally, whether they are engaged all in one instrument, or in several instruments, and whether they have a knowledge of one another's engagements or not; because in all these different cases, a payment by one surety is equally a benefit to all the other sureties." All these cases it is to be observed, speak of the sureties as being co-sureties; also as being sureties of the same degree, and bound for the same identical debt, by an obligation at least concurrent in its char-

acter and effect, if not known to the surety claiming contribution at the time his responsibility was contracted. The only case having a different bearing and recognizing a different principle, is the case of *Parsons vs. Briddoch*, 2 *Vernon*, 608 ; and that case, this court say in 5 *Harr. & John*. 242, "has pushed the doctrine of substitution to its utmost verge." There the principal had given bail in an action; judgment was recovered against the bail; afterwards the surety was called upon and paid, and it was held, "that he was entitled to an assignment of the judgment against the bail." That case was decided on the ground, that the bail stood in the place of their principal, and could not be relieved on other terms, than on payment of principal and interest and costs ; and standing in the shoes of the principal, who would have been responsible to the surety, it was a necessary consequence of that relation, that they should be subject to a similar liability. But in this case, where the same reason for responsibility does not exist to make the sureties in the last bond responsible to the sureties in the first, for the purpose of re-imbursement and indemnity, would be to reverse the general rule regulating the order of liability in analogous cases, without, as it seems to us, any valid and sufficient ground to justify the establishment of such a principle. At the same time, however, that we hold the surety in the last bond not responsible to the surety in the first, we are clearly and decidedly of opinion that the surety in the first bond would be entitled on the ground of substitution to the benefit of any lien upon his own property, either real or personal, which the principal might give to the creditor as security for the payment of his debt, as the means of re-imbursement and indemnity against loss, if in his character of surety, he should be compelled to satisfy such debt. Of his rightful claim to the benefit of such a lien, in that event, we think there can be no doubt, and his title would be equally valid, whether its existence was prior, contemporaneous, or subsequent to the time of his suretyship.

The judgment of the court below, for the reasons herein stated, must, however, be reversed, but no procedendo will be ordered.               JUDGMENT REVERSED.